

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

November 17, 1958

Honorable Bill Allcorn, Commissioner
General Land Office
Austin 14, Texas

Opinion No. WW 540

Re:  Whether the primary terms of oil
and gas leases covering tracts in
the Gulf of Mexico beyond three
geographic miles are suspended
because of pending litigation under
the provisions of Art. 5421i, VCS
(Acts 1941, 47th Leg., p. 1405,
ch. 637, sec. 1, as amended Acts
1951 52nd Leg., p. 750, ch. 406,
sec. 1) and related questions.

Dear Mr. Commissioner:

You have requested an official opinion regarding the
questions, mentioned in the above caption, which are set out
in full in the body of this opinion.

In your request you mentioned the pendency of litiga-
tion in the Supreme Court of the United States involving
ownership "beyond three geographical miles" in the Gulf of
Mexico.  The case to which you refer is styled United States
of America, Plaintiff v. States of Louisiana, Texas,
Mississippi, Alabama and Florida, Defendants, No. 11 Original,
October Term, 1957 (now No. 10 Original, October Term, 1958.)

Prior to June 24, 1957 the State of Texas filed an
amicus curiae brief in a case brought by the United States
against Louisiana involving ownership of submerged lands off
the Louisiana coast.  The reason for the filing of the amicus
brief by Texas was that it appeared from assertions made in
the briefs of Louisiana and the United States concerning Texas'
submerged lands that the rights of Texas might be adversely
affected in a case to which Texas was not a party.

The United States Supreme Court by its order of June
24, 1957 (as amended by order October 22, 1957) declared that
the issues involved in the Louisiana case were so related to

the interests of Texas that the court allowed Texas sixty days within which to intervene, and, if it failed to do so, the order permitted the United States sixty days thereafter within which to add Texas as a party. Texas did not intervene. The United States filed an amended complaint November 7, 1957 by which Texas, Mississippi, Alabama and Florida were added as parties defendant. (This date has been confirmed by letter of the Clerk of the Supreme Court dated November 6, 1958.)

We deem it of importance to advise you of some of the relevant portions contained in the Amended Complaint against Texas. Despite the wording of the Congressional Submerged Lands Act, 67 Statutes at Large 29, (1953) the United States in its Amended Complaint averred that when Texas became a member of the Union its boundaries did not extend into the Gulf

> "more than three geographic miles from the ordinary low-water mark or from the outer limits of the inland waters, and the Congress...has never approved a boundary for said State extending into the Gulf...more than three geographic miles from the ordinary low-water mark or from the outer limits of inland waters."

The United States alleged that Texas claims some right, title and interest in the "lands, minerals and other things" seaward of that line. The complaint averred that the United States

> "is now entitled to exclusive possession of and full dominion and power over the lands, minerals and other things underlying the Gulf of Mexico, lying more than three geographic miles seaward from the ordinary low-water mark and from the outer limit of inland waters on the coast of Texas, extending seaward to the edge of the continental shelf, and is entitled to an accounting for all sums of money derived therefrom by the State of Texas after June 5, 1950, which are properly owing to the United States under the decree entered by this Court on December 11, 1950, in the case of United States v. Texas, 340 U.S. 900."

We feel that the rather detailed recital above given is essential to an understanding of our answers to your questions.

In your opinion request you quote Article 5421i, V.C.S., but only in part. Article 5421i was enacted in 1941, but it was amended in 1951. We will quote the entire act, the underscored portion representing the language of the amendment incorporated into the act in 1951.

"The running of the primary term of any oil, gas or mineral lease heretofore or hereafter issued by the Commissioner of the General Land Office, which lease has been, is, or which may hereafter become involved in litigation relating to the validity of such lease or to the authority of the Commissioner of the General Land Office to lease the land covered thereby, shall be suspended, and all obligations imposed by such leases shall be set at rest during the period of such litigation. After the rendition of final judgment in any such litigation, the running of the primary term of such leases shall commence again and continue for the remainder of the period specified in such leases, and all obligations and duties imposed thereby shall again be operative provided such litigation has been instituted at least six (6) months prior to the expiration of the primary term of any such leases. Provided further, that the lessee shall pay all annual delay rentals and any royalties which accrue during the period of litigation the same as during any other period of the extended primary term. Such rentals paid during the litigation period shall be held in suspense and returned to the lessee in the event the State is unsuccessful in any such litigation. As amended Acts 1951, 52nd Leg., p. 750, ch. 406 § 1.

Your questions will be answered in the sequence in which you propound them:

(1) " Are leases beyond the three geographical mile line suspended under the provisions of the above statute?"

After the enactment of the 1941 act original mandamus proceedings were brought in the Texas Supreme Court prior to December, 1950 by Ohio Oil Co., et al v. Giles, Commissioner of the General Land Office, and others, (235 S.W.2d 630) to compel refund to the relator oil companies of the amounts paid as delay rentals under mineral leases covering submerged lands in the Gulf issued by the State to Relators on the basis that there was then pending in the United States Supreme Court an action by the United States against Texas to recover the submerged lands, and that by the terms of Art. 5421i of 1941 all obligations were suspended. (See 339 U.S. 707; 340 U.S. 900)

The Supreme Court of Texas held that the annual delay rentals under such mineral leases were "obligations" within the meaning of Article 5421i (of 1941) and that the requirement

to pay delay rentals was suspended during the litigation
between the United States and the State of Texas.  The Texas
Attorney General urged the proposition that if the annual
rentals were "obligations", and if Article 5421i (of 1941)
was interpreted as releasing or suspending them, that Article
5421i /or 1941/ was in violation of Article 3, Section 55 of
the Texas Constitution.  The court held:

> "Since the part of the act relating to leases
> executed prior to the enactment of Article 5421i
> /of 1941/ is not involved in this case, it is not
> necessary to consider and construe that part of the
> act.  When we consider the part of the act involved
> in this case and construe it in the light of the
> many decisions in this State in point, we find that
> it is constitutional...We further hold that the provi-
> sions of the act involved here do not violate Article
> III, Section 55, of the Constitution of Texas.  Arti-
> cle 5421i relieves the lessees of the obligation to
> pay delay rentals during the suspended period..."

The Texas Supreme Court mentioned that the Relators
were not parties to the United States Supreme Court case, and
stated that after leave to file mandamus had been granted, and
before the Supreme Court of Texas handed down its opinion, a
final judgment had been rendered by the United States Supreme
Court adverse to Texas.  The Texas Supreme Court stated:

> "The effect of that judgment is that the Commis-
> sioner of the General Land Office had no authority
> to execute the oil and gas leases in question."

The Texas Supreme Court refused to decide the question
as to when the suit in the United States Supreme Court had
been commenced, i.e. when the suspension took effect.  (See
235 S.W. 2d 630 at 637)

After the adverse decision in the Texas case the Con-
gress enacted the Submerged Lands Act, supra, the purpose of
which, as to the Gulf Coastal States, was to restore to such
states proprietary rights in submerged lands in the Gulf out
to seaward boundaries of the respective states as they existed
prior to or at the time such states became members of the
Union, or as theretofore approved by Congress.  Incidentally,
the Republic of Texas fixed its maritime boundaries at three
marine leagues seaward by Act December 19, 1836, (1 Laws Rep.
Tex. 133), and the United States Supreme Court upheld the
grant of proprietary rights in the submerged lands under the
Submerged Lands Act in Alabama v. Texas (347 U.S. 272).

In our opinion the amendment to Article 5421i V.C.S. in 1951 substantially alters the situation in some respects from that posed before the Texas State Supreme Court in 1950. It is true that the primary term of the leases is suspended as provided in the amended statute, and, though the amended statute carries forward the language "all obligations imposed by such leases shall be set at rest during the period of such litigation," yet, the amendment provides "that the lessees shall pay all annual delay rentals and any royalties which accrue during the period of litigation the same as during any other period of the extended primary term" and it provides that the rentals shall be held in suspense and returned to the lessees in the event the State is unsuccessful in any such litigation. Thus, under the amendment, the obligation of the State's lessees to pay delay rentals and royalties continues during such litigation.

The answer to your first question, then, is:

(1) Leases beyond three geographic miles seaward from the low-water mark and from the outer limits of the inland waters on the Coast of Texas are not fully suspended in the sense in which you stated your questions;

(2) Lessees holding such leases must continue to pay all annual delay rentals and any royalties which accrue during the period of litigation, "such rentals" to be held in suspense:

(3) The primary terms of such leases are suspended during the period of such litigation, and after the rendition of final judgment, if such judgment is favorable to Texas, the running of the primary terms shall commence again and continue for the remainder of the period specified in such leases, and the obligations and duties imposed there by shall again be operative provided such litigation was instituted at least six months prior to the expiration of the primary term, and

(4) In view of the holding and language of Ohio Oil Co. v. Giles (235 S.W.2d 630) the statutory suspension of obligations is constitutional as against the contention that the Act (Art. 5421i) is violative of Section 3, Article 55 of the Texas Constitution, though it should be borne in mind that Art. 5421i as amended does not relieve lessees of their obligation to pay royalties and delay rentals.

Your second question was:

(2) "If your answer to question number 1 is in the affirmative, what is the exact date of the beginning of the period during which the primary terms of those leases are suspended?"

We have explained that the United States Supreme Court by its order of June 24, 1957 (as amended) allowed Texas sixty days within which to intervene, and, if it failed to do so, allowed the United States sixty days thereafter within which to add Texas as a party. By that order Texas was not compelled to intervene, and it is our opinion that intervention was not proper because the Congress of the United States had not given its consent to a suit against the United States. As to that portion of the order allowing the United States sixty days thereafter within which to add Texas as a party, it is our opinion that there was then no pending suit against Texas because the United States, in its discretion, could have chosen not to sue Texas, (the President having stated Texas owned her submerged lands) even though it might have elected to sue other Gulf Coastal States, and therefore there was no "litigation" pending, within the wording of Article 5421i (as amended), until a suit was actually filed against Texas.

We therefore answer that the "exact date of the beginning of the period during which the primary terms" of the leases in question were suspended is November 7, 1957, the date Texas was made a party defendant by the filing of the Amended Complaint by the United States.

Your third question was:

(3) "If your answer to question number 1 is in the affirmative, then as to leases where the three geographical mile line cuts across lands covered thereby, is the running of the primary terms of those leases suspended as to all of the land covered by that lease or only as to that part of the land covered by the lease which is seaward of the three geographical mile line?"

An over-literal or hyper-technical construction of the act might cause one on first impression to think either (a) that, except as to royalty and rental obligations, since a portion of the lease is affected by litigation, the remaining obligations as to the entire lease are suspended, or, (b) since the entire lease is not affected there is no suspension as to any part of it.

It is our opinion that either of such constructions would be unreasonable; would result in an absurdity and would thwart the legislative intent.  It is elementary that there is but one fundamental rule of construction as to statutes and that is that the legislative intent must govern (39 Tex. Jur. /Statutes7, Sec. 87, p. 160) and that the object of construction is to enforce, and not thwart, legislative intent (39 Tex. Jur./Statutes7 Sec. 90, p. 167).

Therefore, our answer is:  where a portion of the lease lies more than three geographic miles seaward from the ordinary low-water mark or from the outer limit of inland waters, and a portion of the lease lies landward of that line, the obligations of the lessees under Article 5421i are not suspended as to that portion of the submerged lands lying landward of that line because the United States has not sued for recovery of lands within that area, and there is no "litigation" pending which affects that portion of the leases executed by the State.  To hold that all or none of the obligations of the entire lease are suspended would be an unreasonable construction of Article 5421i.  The Courts, in construing statutes, will not impute to the legislature an intention to create an unreasonable result.  See 39 Tex. Jur. (Statutes) Sections 118, 119, and cases there cited.

## SUMMARY

Under Article 5421i, VCS, (Acts 1941, 47th Leg., p. 1405, ch. 637, sec. 1, as amended Acts 1951, 52nd Leg., p. 750, ch. 406, sec. 1) lessees from the state holding oil, gas and mineral leases underlying the Gulf of Mexico lying more than three geographic miles seaward from the ordinary low-water mark and from the outer limit of inland waters on the Coast of Texas must continue to pay all annual delay rentals and any royalties which accrue during the period of litigation involved in United States v. Louisiana, Texas, et al, No. 10 Original, October Term, 1958.  The primary terms of such leases are suspended during such litigation.  After rendition of final judgment, if the judgment is favorable to Texas, the running of the primary terms shall commence and continue for the remainder of the period specified in the respective leases, and the other obligations and duties imposed thereby shall again be operative provided the litigation, above mentioned, was instituted at least six (6) months prior to the expiration of the primary term.  Because of the holding of the Texas Supreme Court in Ohio Oil Co. v. Giles, supra, the statutory suspension under Article 5421i as amended is constitutional as against the contention that theAct violates Section 3, Article 55, Texas Constitution, but the lessees

must continue to pay rentals and royalties.  The date the period of suspension commences is November 7, 1957.  If a portion of a lease lies more than three geographic miles seaward from the ordinary low-water mark or from outer limits of inland waters, and a portion lies landward of that line, the obligations of lessee, under Article 5421i, are not suspended as to the portion lying landward of the line, but are suspended as to the portion lying seaward of the line, except, that the lessee must continue to pay annual delay rentals and royalties on the seaward portion.

Very truly yours,

WILL WILSON
Attorney General of Texas

By James N. Ludlum
First Assistant
Attorney General

JNL/grb

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

L. P. Lollar
J. C. Davis, Jr.
John Reeves
John Webster
James Rogers

REVIEWED FOR THE ATTORNEY GENERAL
BY:   W. V. Geppert